UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENNITA CRAWFORD,                              Case No. 09-12932

                Plaintiff,            Stephen J. Murphy, III
vs.                                            United States District Judge

AEROTEK, INCORPORATED,                         Michael Hluchaniuk
                                               United States Magistrate Judge

                Defendant.
_____/

**REPORT AND RECOMMENDATION
MOTION FOR SUMMARY JUDGMENT (Dkt. 33)**

## I.    PROCEDURAL HISTORY

Plaintiff filed a charge with the Equal Opportunity Employment

Commission on October 8, 2008, alleging that the defendant had engaged in

discriminatory conduct against her.  Plaintiff filed an initial complaint in Federal

District Court on July 24, 2009, alleging sexual harassment, racial intimidation,

failure to promote or train, and a hostile work environment, all of which are

violations of Title VII of the Civil Rights Act of 1964.  (Dkt. 1).  This matter was

referred to the undersigned for all pretrial proceedings on March 29, 2010, by

District Judge Stephen J. Murphy III.  (Dkt. 6).  Plaintiff's second amended

complaint, which is the controlling complaint also included a claim of workplace

retaliation.  (Dkt. 21).  Defendant filed a motion for summary judgment on April

13, 2011.  (Dkt. 33).  Plaintiff filed a response on May 9, 2011.  (Dkt. 35).  A reply to that response was filed by defendant on June 8, 2011.  (Dkt. 37).  Pursuant to notice, a motion hearing was held regarding defendant's motion for summary judgment on May 8, 2011.  (Dkt. 34).  This matter is now ready for report and recommendation.

For the reasons below, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED**, and that the plaintiff's complaint be **DISMISSED** with prejudice.

## II.    FACTUAL BACKGROUND

Bennita Crawford began employment with Aerotek on February 14, 2007 (Dkt. 33-4).  Her employment agreement specified that her rate of pay would be $10.50 per hour.  The employment agreement specified a number of other terms or conditions, relating to insurance plan options, vacation days, and conditions relating to attendance.  Specifically, it provided that her position as a receptionist required her to be on time and that excessive tardiness could result in termination of her employment.  *Id*.

Crawford alleges that she was subjected to various forms of harassment and discrimination during her tenure at Aerotek.  She claims that a co-worker refused to train her and that she was ineligible for a promotion because she did not have the proper skills that would have been acquired if she had been properly trained.

(Dkt 25, p. 8). Crawford asserts that employees of Aerotek intentionally refused to train her because of her race. (Dkt. 21, p. 2). Specifically, she alleges that Jolene Brozkowski, the employee who was supposed to train her, spent time drinking alcohol with other employees and fraternized with the same men who sexually harassed plaintiff. (Dkt. 25, p. 8). Plaintiff claims that the general corporate culture was similar to that of a fraternity, and that it is undisputed that employees at Aerotek drank alcohol on more than one occasion in the office. It is also alleged by various Aerotek employees that plaintiff also drank alcohol in the office and did not object or seem to feel uncomfortable in any way. (Dkt. 33, p.13).

Disciplinary action was taken against plaintiff in the form of oral and written warnings. She had been late to work, and took an excessive number of days off. (Dkt. 33, p. 12). According to Aerotek, plaintiff's disciplinary action regarding her absenteeism disqualified her from any promotion and whether or not she was trained would not have mattered. *Id*. Plaintiff alleges that defendant was simply "building a case against her" and that she was subjected to disciplinary action when other employees had similar attendance issues but were never formally disciplined. (Dkt. 35-2, p. 35). Plaintiff states that the company was building a case against her as a pretext to terminate her employment. Crawford also asserts that she was eventually required to submit documentation of her

medical visits, a policy which was initiated solely for her.  (Dkt. 35-2, p. 44).  In her deposition, plaintiff claimed that a supervisor suggested that she take advantage of the Family Medical Leave Act because she was missing so much work.  According to plaintiff, her supervisors made this suggestion as a pretext just to get her out of the office and that her position would be eliminated when or if she ever tried to return to work.  (Dkt 33-2, p. 36).

Defendant issued formal written warning to plaintiff for an incident that occurred relating to a request for time off.  Plaintiff requested a half day off for her child's birthday on November 20, 2008, and her request was denied by her supervisor, Karen Philbrick, for the stated reason that there simply was no other staff to cover for her absence.  Crawford allegedly became incensed at this denial, used profanity, acted in an unprofessional manner, and insisted that she would still be taking a half a day off.  (Dkt. 33-23).

Plaintiff asserts that from a period of May 2008 to August 2008 she was subjected to embarrassing sexual comments from another employee, Nathan Johanson.  Specifically, plaintiff claims that Johanson called her a "trick," a slang term for prostitute, made inappropriate comments about her breasts, and claimed that she had a nice "swag" when coming into work.  (Dkt. 35, p. 8).  Johanson denies these allegations.  (Dkt. 33-13, p. 14).  Plaintiff also alleges that she was sexually assaulted during a company quarterly outing held at Gator Jake's,

Report and Recommendation
Motion for Summary Judgment
*Crawford v. Aeroteck*; 09-12932

sometime in 2007.  Plaintiff specifically alleges that Joseph Jacobs, an employee of Aerotek at the time, followed her outside the bar, opened the passenger side door when she unlocked it, and attempted to rip her clothes off, and wanted her to give him oral sex.  (Dkt. 33-2, p. 26).  These allegations were not reported in the formal report she made to Reid Higley, Aerotek's Employee Relations Manager. Jacobs denies that this incident happened.  (Dkt. 33-14, p. 13).

Plaintiff also alleges that Aerotek knowingly allowed a hostile work environment to exist based on racial intimidation.  Specifically, that another employee of Aerotek harbored racist views of plaintiff, which in turn caused a hostile working environment.  (Dkt. 35-2, p. 21).

On August 12, 2008, Crawford made a formal written complaint of sexual harassment to Higley, the Employee Relations Manager.  An investigative report was filed on August 20, 2008 detailing interviews between Higley and various employees at the Troy Office.  Higley also met with Crawford at the Hyatt hotel in Troy.  Based on his investigation, Higley made the conclusion that this was largely a case of "he said, she said."  Higley concluded that alcohol was brought into the office on several occasions and that discipline was warranted as to those individuals.  Higley concluded that the "trick" comment did occur, but it is not clear in what context; it may have been a completely innocent comment, but could have been interpreted in a negative light.  Higley recommended that Crawford be

given several options that would ensure that she would be working in a safe environment. One, she could stay in the current office, but move across the hall so she would not have to come into contact with her co-workers. Two, she was offered an option to be transferred to the Southfield office. Lastly, she was offered to transfer back to the Warren office. She chose to transfer back to the Warren office, which was formally completed as of August 28, 2008. (Dkt. 33-12, p. 5).

Plaintiff was ultimately separated from the company involuntarily on December 31, 2008. The entire Warren office was closed and the stated reason for her termination of employment was simply that no position was available for her. (Dkt. 33-18). The decision to close the Warren office was made by Mike Hansen and Steve Forman. In his declaration, Hansen states that there were two administrative support positions at the Warren office (one being Bennita Crawford), and that both positions were eliminated as a result of the closure of the Warren office. Hansen states that 11 other administrative positions were eliminated as of March 2009, and that at the Troy office, only one administrative support position still existed, and that position was held by a female African-American employee. Hansen also states that Aerotek had received an 85% decline in temporary contract workers, and that over 73% of the administrative support positions eliminated in the state of Michigan were held by white workers. Plaintiff alleges that any such justification by Aerotek is merely

pretextual, and that she was also subjected to various sorts of harassment, including annoying phone calls from fellow co-workers, suggestions from a supervisor that she take leave pursuant to the Family Medical Leave Act, unfair disciplinary action, along with a requirement that doctor's notes be provided, a policy that plaintiff alleges was only put in place only for her.

## IV.   ANALYSIS AND CONCLUSIONS

### A.   Standard of Review

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See*

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

*Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Under Federal Rule of Civil Procedure 56, a party asserting a fact that cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations, admission, interrogatory answers, or other materials; or a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact.  Fed.R.Civ.P. 56(c)(1).[1]

B.      Hostile Work Environment

1.      Legal standards

Under the hostile work environment theory, in order to survive summary

---

[1] Formerly, "Rule 56(e) require[d] that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit ... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Johnson v. Memphis City Schools*, 2010 WL 1957267, *2 (W.D. Tenn. 2010), quoting, 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure, § 2722, at 379-80 & 382-84 (1988). According to the Advisory Comments to the recent amendments, this specific requirement was omitted because as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record.  Comments, 2010 Amendments to Fed.R.Civ.P. 56, subdivision (c). Notably, the language changes have not changed the standard itself.  *Id*. ("The standard for granting summary judgment remains unchanged.").

judgment, plaintiff must establish that:  (1) she is a member of a protected class (female [or African-American]), (2) she was subjected to harassment, either through words or actions, based on sex [or race], (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile or offensive work environment; and (4) there exists some basis for liability on the part of the employer.  *Grace v. Uscar*, 521 F.3d 655, 678 (6th Cir. 2008), citing *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 49 (6th Cir. 1996). Moreover, "[t]he harassment must meet both an objective and a subjective test, 'in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to a reasonable person and the actual victim.'"  *Id.*, quoting *Randolph v. Ohio Dep't of Youth Svcs.*, 453 F.3d 724, 733 (6th Cir. 2006).  Factors to consider in determining whether a hostile work environment actually exists include, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Id.*, quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (emphasis omitted).  In addition, "courts must determine whether the 'workplace is permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'"  *Id.* at 678-679, quoting *Harris*, at 21

Report and Recommendation
Motion for Summary Judgment
*Crawford v. Aerotech*; 09-12932

(internal citations omitted).  Failure to establish a *prima facie* case is grounds to grant a defendant summary judgment.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).

Once a hostile work environment is established, an employee alleging sexual harassment by a coworker must still establish that the employer is liable because it knew or should have known of the harassment, yet failed to take prompt and appropriate corrective action.  *EEOC v. Harbert-Yeargin, Inc.,* 266 F.3d 498, 518 (6th Cir. 2001).  This Sixth Circuit held in *Blankenship v. Parke Care Ctrs.*, Inc., 123 F.3d 868 (6th Cir. 1997),[2] that when coworker harassment is at issue, an employer is liable "if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known."  *Id.* at 872-73.

---

[2] In *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 338 (6th Cir. 2008), the Sixth Circuit observed that *Blankenship* was modified by the Supreme Court's decisions in *Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 807 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 758-59 (1998), it remained good law for the proposition that a company may be held liable for coworker harassment if its "response manifests indifference or unreasonableness in light of the facts the employer knew or should have known."  *Blankenship*, 123 F.3d at 873; *see also Collette v. Stein-Mart, Inc.*, 126 Fed.Appx. 678, 684 n. 3 (6th Cir. 2005) (noting that *Blankenship's* suggestion that "mere negligence" is insufficient to establish employer liability was overruled by *Ellerth/Faragher* and suggesting that, post-*Ellerth/Faragher*, "an employer may be held liable when its remedial response is merely negligent, however well-intentioned"); *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829 (6th Cir. 1999) (holding that, post-*Ellerth/Faragher*, the standard for coworker harassment is negligence, but applying *Blankenship* to define negligence as an employer response that "manifests indifference or unreasonableness in light of the facts").

2.    Parties' arguments

According to defendant, the vast majority of conduct complained of by plaintiff, even if it could be considered "harassment," was not "discriminatory harassment," and therefore does not warrant consideration for purposes of analyzing her hostile work environment claim.  Specifically, plaintiff complained of "being called a 'trick,' being called 'cheap,' being constantly whistled at, being exposed to comments about [her] 'titties,' and being exposed to comments insulting her intelligence as it related to her race."  According to defendant, plaintiff cannot demonstrate that being called "cheap" or being whistled at had anything to do with her gender, those allegations cannot be considered in the hostile workplace analysis.  Based on plaintiff's own "Formal Complaint," the complained of conduct was engaged in by both women and men.  Further, defendant argues that plaintiff's claim that she was "exposed to comments insulting [her] intelligence as it relates to [her] race" is entirely based on her own subjective belief.  This allegation relates to a comment concerning the educational children's reading program, "Hooked on Phonics" (Ex. 11, Report of Investigation).  Defendant asserts, however, that plaintiff cannot offer any evidence, just her subjective belief that this allegation somehow related to her race.  During her deposition, defendant says that plaintiff did not provide any examples of comments that purportedly insulted her intelligence based on her race.

Defendant maintains that plaintiff's "bare subjective belief that certain nebulous comments were racially insulting simply does not give rise to a hostile work environment claim."

Defendant acknowledges that certain conduct could possibly fall within the ambit of "discriminatory harassment" such as plaintiff's claims that she was called a "trick," and that she was exposed to comments about her "titties."  Defendant argues, however, that plaintiff cannot produce any evidence that these alleged comments were anything more than "discrete occurrences."  Likewise, even if the court were to consider plaintiff's allegation that she was subjected to comments insulting her intelligence on the basis of her race (apparently one ambiguous comment made by a co-worker regarding the educational program "Hooked on Phonics"), plaintiff offers no evidence that this comment was anything more than an isolated occurrence.  According to the Sixth Circuit, "the occasional comments, which may have been 'offensive utterances,' do not rise to the level required by the Supreme Court's definition of a hostile work environment in *Harris* (i.e., 'physically threatening or humiliating')." *Grace*, 521 F.3d at 679, quoting *Harris*, 510 U.S. at 23.

Defendant also argues that even if plaintiff has made out a *prima facie* case, it took prompt, remedial action, which insulates it from liability.  According to defendant, plaintiff admits that defendant's prompt and appropriate remedial

action successfully abated any alleged "harassment."  According to her deposition testimony, following the investigation the harassment that she was allegedly being subjected to by her coworkers stopped.  *See Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349-350 (6th Cir. 1988) (concluding that summary judgment was appropriately granted in favor of the defendant/employer where no further harassment occurred following notice to employer and employer's prompt remedial action).  Thus, defendant argues, even if the Court were to conclude that the alleged behavior of plaintiff's co-workers amounted to hostile work environment based on either her race or her sex, defendant is immune from liability because it took prompt and appropriate remedial action which plaintiff admits stopped the alleged harassment.

According to plaintiff, she was subjected to repeated and unwelcomed sexual harassment including; being called a "trick" (slang for a prostitute); having various and repeated comments made about her breasts; having men look down her shirt; being targeted for the way plaintiff moved her hips while walking; and being whistled at.  (*See e.g.*, Exhibit C: Complaint Interview Form).  Plaintiff also claims that in 2007, after a quarterly office meeting, one of her coworkers followed plaintiff out to her car and attempted to force her to perform oral sex on him.  (Exhibit A: Crawford at 99).

In addition, plaintiff claims that she has been prejudiced from a complete

presentation of her claim because defendant intentionally destroyed plaintiff's documentary evidence chronicling the exact scope of defendant's harassment. (Exhibit A: Crawford at 107). Thus, plaintiff claims that defendant's bad faith destruction of evidence exposes defendant to an adverse inference instruction at trial. On August 12, 2008 in plaintiff's Formal Complaint, she stated that, "I am in contact with an attorney to look into safeguarding my workplace rights through litigation." (Exhibit J). According to plaintiff, defendant emptying her desk and destroying her personal effects the next day is clear retaliation and is also bad faith destruction of evidence.[3]

Plaintiff urges the court to reject defendant's argument that the harassing comments were not discrimination because the conduct was engaged in by both men and women because it is untrue. In her formal complaint, plaintiff does not complain that the men and woman harass her. (Exhibit J). Instead, she clearly claimed that the men harassed her and she was upset that, "the men and women fail to see the effects and consequences this behavior has on certain co-workers..." *Id*. As to the particular discrete acts, plaintiff identifies Nate Johansen and Dave

---

[3] In response, defendant asserts that plaintiff's claim that she is entitled to adverse inference is "ridiculous." (Dkt. 37, Pg ID 650). According to defendant, plaintiff did not identify the "stuff" she alleges was taken or destroyed, she never complained about any theft, and the first time this was ever mentioned was at her deposition. Defendant also indicates that the alleged theft was never mentioned in plaintiff's EEOC complaint. (Dkt. 37, Pg ID 651).

Perlin (though primarily Johansen) as the individuals that made the harassing comments.  (Exhibit C).

Plaintiff also claims that defendant failed to take prompt remedial action.  In the present case, defendant readily acknowledges that, "It was also noted from the investigation that sexual harassment was alleged by an internal employee and that behavior occurred in the office that would not be consistent with the internal employee conduct policy of the company."  (Exhibit F).  According to plaintiff, defendant completely ignored the February 2007 sexual assault perpetrated against plaintiff by a fellow employee.  (Exhibit E: Investigative Report).  Plaintiff also claims that the disciplinary actions were inadequate.  Rather than disciplining the employees that engaged in the subject conduct, defendant issued an office wide memorandum that included a number of employees that were not involved in any conduct violating of company policy.  (Exhibit G: Haight at 49-50).  And, defendant's only remedial act of moving plaintiff to another office, is undercut by events following the transfer.  According to plaintiff, defendant's so-called prompt remedial action was just the first step in effectuating a retaliatory discharge. Following the conclusion of defendant's investigation, Philbrick immediately went on the offensive against plaintiff.  In quick succession, plaintiff, who had no prior disciplinary history, received four (4) major disciplinary actions for "absenteeism" and "tardiness."  In addition, plaintiff was also made the subject of new attendance

policies that applied only to her.  For example, plaintiff was required to bring in doctors notes to prove that her absences were medically related.  (Crawford at 131).  According to plaintiff, Philbrick admits that this was not company policy, rather a special policy that she instituted especially for Plaintiff.  (Philbrick at 67-68).  Plaintiff also alleges that, Philbrick admitted that this policy was "unethical."  *Id.* at 86-87.  Plaintiff urges the Court to examine with great scrutiny the treatment that plaintiff received during two of the subject disciplines. When giving plaintiff the September 29, 2008 progressive game plan, Philbrick told plaintiff that she should hand in her resignation.  (Philbrick at 78-79).  On November 28, 2008, Philbrick again disciplined plaintiff for alleged absenteeism, threatened to terminate her and attempted to force her onto FMLA.  (Crawford at 139; Philbrick at 11).  According to plaintiff, these retaliatory events are a continuation of the sexual harassment faced by plaintiff and demonstrate that Defendant did not take prompt remedial action.  Instead, defendant took a measured approach calculated at "building a case" against plaintiff and then terminating her for complaining about the sexual harassment.

Aerotek urges the Court to reject plaintiff's attempt to make an issue out of the fact that the Investigative Report does not contain any reference to her allegations of a purported "sexual assault," which allegedly occurred more than a year prior to Crawford's formal complaint and Aerotek's investigation. According

to Aerotek, the report does not reference the alleged sexual assault because Crawford admittedly never reported it, either at the time of the alleged incident (Ex. 1, 100:14-21; 102:20-21; 101:16-102:11) or in her formal complaint (Ex. 6). Aerotek also points out that Crawford failed to even make a passing reference to the alleged sexual assault in her Formal Complaint (Ex. 6), nor is there any reference to the alleged sexual assault in the Complainant Interview Form.  (Ex. 11, pp. 10-13).  Aerotek also asserts that it is now convenient that Crawford claims that she made Higley aware of the alleged sexual assault during a telephone call, however, when Higley e-mailed Crawford to follow-up concerning her formal complaint, she declined to provide any information concerning it or any other alleged conduct, or otherwise modify her formal complaint.  (Exs. 9-10). Moreover, when Crawford subsequently filed a charge of discrimination with the EEOC on September 24, 2008, she did not mention the alleged sexual assault (Ex. 7), nor did Crawford mention the alleged sexual assault when she subsequently amended her Charge on February 3, 2009.  (Ex. 8).  In fact, it is not until Crawford filed her lawsuit on July 24, 2009 that she first vaguely referenced the alleged sexual assault.  (Dkt. 1, p. 3).  Thus, according to Aerotek, there is no evidence corroborating Crawford's claim that she advised Aerotek of the alleged assault.

       3.    Analysis

     In the view of the undersigned, Aerotek took prompt, remedial action in

response to plaintiff's complaints. As soon as Crawford reported the allegations to Higley, she was placed on paid administrative leave, Higley responded to her complaint within hours, and he personally flew to Michigan to interview employees at the Warren office, as well as plaintiff. Plaintiff primarily relies on *West v. Tyson*, 374 Fed.Appx. 624 (6th Cir. 2010) to show that defendant did not take prompt remedial action. The facts in *West* involved allegations of an entirely different nature (plaintiff feared for her personal safety as alleged incidents of whistling, sexual comments, and physical touching occurred 10-15 times per shift). The only response by West's supervisor after reporting the incident was to transfer her to a different line and "watch her." Nothing was reported to upper level management. *Id*. Plaintiff's reliance on *West* is misguided and is not applicable to this case because defendant immediately took steps to immediately remove plaintiff from the hostile environment she identified, the company acted promptly to investigate the claims and ensure that the alleged harassment ceased. Plaintiff even admits that there was no further sexual or racial harassment after the investigation and transfer. Under these circumstances, defendant's prompt, remedial action bars plaintiff's hostile work environment claim.

In addition, plaintiff claims that the investigation did not address the claimed sexual assault and therefore, does not constitute "prompt, remedial" action. Plaintiff is correct that the investigation report did not specifically address

Report and Recommendation
Motion for Summary Judgment
*Crawford v. Aeroteck*; 09-12932

the alleged sexual assault.  Defendant asserts that plaintiff failed to promptly

report the incident (it was reported to Higley over a year after it occurred) and that

she failed to provide the name of the perpetrator or any details regarding the

incident.  In the view of the undersigned, this seeming factual "dispute" regarding

whether and to what extent the incident was reported during the investigation is

immaterial.  Rather, the problem with plaintiff's claim is that she identifies

nothing that defendant failed to do to "remedy" the situation, once it was reported.

The accused employee no longer worked for defendant at the time it was allegedly

reported and plaintiff complained of no other such incidents or any conduct even

coming close to a physical sexual assault.  Under these circumstances, plaintiff has

not identified any material defect in the prompt, remedial action taken by

defendant and thus, the sexual assault allegation does not cause plaintiff's hostile

work environment claim to survive.  And, given the lack of specificity or detail

regarding her purported "spoliation" claim, the undersigned is not persuaded that

this allegation saves her claim.

Finally, plaintiff says that she is not making a traditional failure to

train/failure to promote claim.  Rather, according to plaintiff's response to the

motion for summary judgment, the allegations regarding her lack of training and

lack of promotion should be considered in the context of her hostile work

environment claim.  However, it is not clear on this record that defendant ever

received notice of a hostile work environment claim based on these allegations. There is nothing in plaintiff's written formal complaint regarding training. Notably, there is nothing in the follow up emails between Higley and plaintiff on this issue and there was nothing mentioned in the investigation report. Unlike the sexual assault claim, plaintiff does not maintain that she reported this conduct to defendant during the investigation. Plaintiff points to no evidence that defendant knew or should have known about this particular harassment issue and failed to address it. In the absence of some other evidence to show actual or constructive notice, the undersigned is not persuaded that plaintiff's testimony that she raised the issue of lack of training with Brozkowski and Philbrick at various points in time (unconnected to her formal complaint) is sufficient to put defendant on notice of plaintiff's claim that her complaints about a lack of training and promotion were part of a hostile work environment based on her race and sex.

      D.    <u>Retaliation</u>

             1.    Legal standards

"The plaintiff must make out a prima facie case of retaliation by establishing four elements: (1) the plaintiff engaged in an activity protected by Title VII; (2) the defendant knew that the plaintiff exercised his or her rights; (3) the defendant took an employment action against the plaintiff that a reasonable employee would have found materially adverse; and (4) there was a causal

connection between the protected activity and the adverse employment action."

*Watson v. City of Cleveland*, 202 Fed.Appx. 844, 855 (6th Cir. 2006). In the

absence of direct evidence, proof of a Title VII retaliation claim is controlled by

*McDonnell Douglas*, just as with a discrimination claim. In this case, plaintiff has

not offered any direct evidence of retaliation. Thus, plaintiff's retaliation claim

must be analyzed under the *McDonnell-Douglas* burden-shifting framework,

which provides that if the plaintiff establishes a *prima facie* case, then the burden

shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for

its action. *McDonnell Douglas*, 411 U.S. at 802. Because the ultimate burden of

persuasion rests with the plaintiff, once the defendant comes forward with

legitimate nondiscriminatory reasons for its actions, the plaintiff has to

demonstrate by a preponderance of the evidence that the employer's reasons were

pretextual. *Wrenn v. Gould*, 808 F.2d 493, 501 (6th Cir. 1987). The plaintiff has

the ultimate burden of persuasion even though a *prima facie* case, once

established, shifts the burden of producing evidence to the defense. *Id*.

To establish pretext, a plaintiff must show "'either (1) that the proffered

reasons had no basis in fact, (2) that the proffered reasons did not actually

motivate [his] discharge, or (3) that they were insufficient to motivate discharge.'"

*Russell v. University of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008), quoting

*Manzer v. Diamond Shamrock Chems. Co.*, 29 F. 3d 1078, 1084 (6th Cir. 1994),

Report and Recommendation
Motion for Summary Judgment
*Crawford v. Aeroteck*; 09-12932

overruled on other grounds, *Geiger v. Tower Automotive*, 579 F.3d 614 (6th Cir.

2009). "For an employer to avoid a finding that its claimed nondiscriminatory

reason was pretextual, the employer must be able to establish its reasonable

reliance on the particularized facts that were before it at the time the decision was

made." *Escher v. BWXT Y-12*, *LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010) (internal

citations omitted). However, "[t]he investigation process does not need to be

perfect, but the employer must make a reasonably informed and considered

decision before taking an adverse employment action." *Id*. (internal citations and

quotation marks omitted).

In order to determine whether the plaintiff has raised a genuine issue of

material fact as to pretext, the Court must consider not whether defendant's

reasons for taking an adverse action against the plaintiff were actually good

reasons, but instead whether the defendant had an honestly held belief that they

were. *See Alan v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008).

> [T]he key inquiry in assessing whether an employer
> holds such an honest belief is whether the employer
> made a reasonably informed and considered decision
> before taking the complained-of action. An employer has
> an honest belief in its rationale when it reasonably relied
> on the particularized facts that were before it at the time
> the decision was made. [W]e do not require that the
> decisional process used by the employer be optimal or
> that it left no stone unturned.

*Id*., quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th

Cir. 2007). "The 'plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action.'" *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008), quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001).

      2.    Parties' arguments

Defendant's position regarding whether the disciplinary actions taken against plaintiff after she filed her complaint constituted "adverse employment action" is not entirely clear, but it does not seem to dispute this issue, or the first two prongs of the test (that plaintiff engaged in protected activity under Title VII and that this exercise of rights was known to defendant). Defendant argues, however, that plaintiff has not shown that any of the discipline is causally connected to the protected activity. Defendant seemingly argues that because plaintiff was, in fact excessively tardy and left work early, the discipline was appropriate and therefore, unconnected to her EEOC complaint. Defendant also points out that while plaintiff claims that she was subject to retaliatory harassing phone calls from her former co-workers after she went back to the Warren office, she acknowledges that no racial or sexual comments were made during these phone calls. Defendant asserts that even if plaintiff can establish a *prima facie*

case of retaliation, it too must fail because defendant had a legitimate business reason for all the actions it took (plaintiff's absenteeism and tardiness and the closure of the Warren office).

According to plaintiff, defendant began to immediately retaliate against plaintiff following the conclusion of the investigation and the allegations of excess absenteeism are completely unfounded.  According to plaintiff, Philbrick admits that every single day that plaintiff was absent from work was covered by personal accrued leave time that was properly approved under Defendant's company policy. *Philbrick* at 73.  In fact, at the time of her termination, plaintiff had over 25 remaining hours of personal accrued leave time.  *Id*.  Plaintiff also argues that tardiness was commonplace.  *See Johansen* at 83.  According to plaintiff, Philbrick admitted that plaintiff was tardy before filing the complaint, but Philbrick only recorded one of the tardies and not the others.  *Philbrick* at 59.  In summary, plaintiff argues that the timing of these events in relationship to plaintiff's complaint is highly suggestive of retaliation and creates a genuine issue of material fact for the jury.  While plaintiff asserts that the reasons for her termination are "pretextual," she offers no analysis or explanation of this argument.  (Dkt. 35, Pg ID 466-467).

3.     Analysis

Assuming that defendant's conduct was "materially adverse," the undersigned finds that defendant has established legitimate business reasons for its conduct.  First, as to plaintiff's discipline, there does not appear to be any dispute that plaintiff was, in fact tardy.  Rather, plaintiff argues that other employees were likewise tardy, but not disciplined.  As to plaintiff's termination, there is no question that the Warren office was closed and that both administrative employees at that located were terminated (plaintiff and a white female co-worker).  No evidence has been presented that the facts underlying her disciplinary action or ultimate separation from the company were false.  Further, no evidence has been presented by plaintiff that would indicate that her excessive tardiness and insubordination did not motivate the defendant to discipline plaintiff, or that such a reason was insufficient to warrant such discipline.  And, ample evidence exists to indicate that the entire Warren office was shut down for economic reasons, and that plaintiff would have lost her job at Aerotek with or without any disciplinary record.  Plaintiff was not terminated for disciplinary reasons and she offers no evidence that the closure of the Warren office was pretextual.  Indeed, both administrative employees located at that office were terminated as part of the closure plan, which undercuts any theory of pretext plaintiff might offer.

Lastly, plaintiff can sustain a retaliation claim if she can show that after

filing a complaint alleging violations of Title VII, she suffered severe or pervasive harassment as a result of her filing the complaint. *See Morris v. Oldham County Fiscal Court*, F.3d 784 (6th Cir. 2000). Plaintiff alleges that a number of former fellow co-workers made annoying phone calls after she transferred back to the Warren office. Plaintiff stated that the calls were unnecessary, but made no mention of the frequency of the phone calls or of the unprofessional behavior was alleged. Plaintiff alleged that phone calls were made simply because "they could….In my opinion." (Dkt. 33-2, p. 33). This simply does not satisfy even the relatively low standard of "materially adverse" employment action that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore v. Third Judicial Circuit of Michigan*, — F.Supp.2d —; 2011 WL 4527781 (E.D. Mich. 2011), quoting *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006).

## IV.   RECOMMENDATION

For the reasons above, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED**, and that the plaintiff's complaint be **DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  February 17, 2012                    s/Michael Hluchaniuk
                                            Michael Hluchaniuk
                                            United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 17, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following:  <u>Nabih H. Ayad, Gary C. Ankers, and William B. Balke</u>.

<div style="margin-left: 50%;">

s/Darlene Chubb_____
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov

</div>

<div style="text-align: right;">

Report and Recommendation
Motion for Summary Judgment
*Crawford v. Aeroteck*; 09-12932

</div>